Justice BREYER,
with whom Justice GINSBURG and Justice KAGAN join, dissenting.
The Bankruptcy Code authorizes a court to award “reasonable compensation for actual, necessary services rendered by”, various “professional person[s],” including “attorneys,” whom a bankruptcy “trustee [has] employ[ed] ... to represent or assist the trustee in carrying out the trustee’s duties.” 11 U.S.C. §§ 327(a), 330(a) (emphasis added). I agree with the Court that a professional’s defense of a fee application is not a “service” within the meaning of the Code. See ante, at 2165. But I agree with the Government that compensation for fee-defense work “is properly viewed as part of the compensation for the underlying services in [a] bankruptcy proceeding.” Brief for United States as Amicus Curiae 25. In my view, when a bankruptcy court determines “reasonable compensation,” it may take into account the expenses that a professional has incurred in defending his or her application for fees.
I
The Bankruptcy Code affords courts broad discretion to decide what constitutes “reasonable compensation.” The Code provides that a “court shall consider the nature, the extent, and the value of ... services [rendered], taking into account all relevant factors.” § 330(a)(3) (emphasis added). Cf. Hensley v. Eckerhart, 461 *2170 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (“reemphasiz[ing a trial court’s] discretion in determining the amount of a fee award,” which “is appropriate in view of the [trial] court’s superior understanding of the litigation”). I would hold that it is within a bankruptcy court’s discretion to consider as “relevant factors” the cost and effort that a professional has reasonably expended in order to recover his or her fees.
Where a statute provides for reasonable fees, a court may take into account factors other than hours and hourly rates. Perdue v. Kenny A., 559 U.S. 542, 551-557, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). For instance, “an enhancement” to attorney’s fees “may be appropriate if the attorney’s performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted.” Id., at 555, 130 S.Ct. 1662. And “there may be extraordinary circumstances in which an attorney’s performance involves exceptional delay in the payment of fees” that justify additional compensation. Id., at 556, 130 S.Ct. 1662. These examples demonstrate that increased compensation is sometimes warranted to reflect exceptional effort or resources expended in order to attain one’s fees.
In that vein, work performed in defending a fee application may, in some cases, be a relevant factor in calculating “reasonable compensation.” Consider a bankruptcy attorney who earns $50,000 — a fee that reflects her hours, rates, and expertise— but is forced to spend $20,000 defending her fee application against meritless objections. It is within a bankruptcy court’s discretion to decide' that, taking into account the extensive fee litigation, $50,000 is an insufficient award. The attorney has effectively been paid $30,000, and the bankruptcy court might understandably conclude that such a fee is not “reasonable.”
Indeed, this Court has previously acknowledged that work performed in defending a fee application is relevant to a determination of attorney’s fees. In Commissioner v. Jean, 496 U.S. 154, 160-166, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the Court held that fee-defense work is com-pensable under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The Court quoted with approval the Second Circuit’s statement that “[d]enying attorneys’ fees for time spent in obtaining them would dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.” 496 U.S., at 162, 110 S.Ct. 2316 (quoting Gagne v. Maher, 594 F.2d 336, 344 (1979); internal quotation marks omitted).
A contrary interpretation of “reasonable compensation” would undercut a basic objective of the statute. Congress intended to ensure that high-quality attorneys and other professionals would be available to assist trustees in representing and administering bankruptcy estates. To that end, Congress directed bankruptcy courts to consider “whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under” the Bankruptcy Code. § 330(a)(3)(F). Congress recognized that comparable compensation was necessary to ensure that professionals would “remain in the bankruptcy field.” H.R.Rep. No. 95-595, p. 330 (1977), 1978 U.S.C.C.A.N. 5963, 6286. Cf. Perdue, supra, at 552, 130 S.Ct. 1662 (“[A] ‘reasonable’ fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case”).
In some cases, the extensive process through which a bankruptcy professional *2171 defends his or her fees may be so burdensome that additional fees are necessary in order to maintain comparability of compensation. In order to be paid, a professional assisting a trustee must file with the court a detailed application seeking compensation. Fed. Rule Bkrtcy. Proc. 2016(a). The application will not be granted until after the court has conducted a hearing on the matter. § 330(a)(1). And “[t]he court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.” § 330(a)(2).
By contrast, an attorney representing a private party, or a professional working outside of the bankruptcy context, generally faces fee objections made only by his or her client — and those objections typically ' are made outside of court, at least initially. This process is comparatively simple, involves fewer parties in interest, and does not necessarily impose litigation costs. Consequently, in order to maintain comparable compensation, a court may find it necessary to account for the relatively burdensome fee-defense process required by the Bankruptcy Code. Accounting for this process ensures that a professional is paid “reasonable compensation.”
II
The majority rests its conclusion upon an interpretation of the statutory language that I find neither legally necessary nor convincing. The majority says that Congress, in writing the reasonable-compensation statute, did not “displace the American Rule with respect to fee-defense litigation.” Ante, at 2165. The American Rule normally requires “[e]ach litigant” to “pa[y] his own attorney’s fees, win or lose.” Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010).
But the American Rule is a default rule that applies only where “a statute or contract” does not “provid[e] otherwise.” Ibid. And here, the statute “provides otherwise.” Ibid. Section 330(a)(1)(A) permits a “court [to] award ... reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person.” This Court has recognized that through § 330(a), Congress “ma[d]e specific and explicit [its] provisio[n] for the allowance of attorneys’ fees,” and thus displaced the American Rule. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 260, and n. 33, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (listing § 330(a)’s predecessor among examples of provisions authorizing attorney’s fees).
The majority suggests that the American Rule is not displaced with respect to fee-defense work in bankruptcy because § 330(a) does not specifically authorize fees for that particular type of work. See ante, at 2164 (“Congress did not expressly depart from the American Rule to permit compensation for fee-defense litigation by professionals hired to assist trustees in bankruptcy proceedings”). To the extent that the majority intends to impose a requirement that a statute must explicitly mention fee defense in order to provide compensation for that work, this requirement is difficult to reconcile with the Court’s decision in Jean. There, the Court held that the Equal Access to Justice Act authorizes compensation for fee-defense work. See 496 U.S., at 160-166, 110 S.Ct. 2316. The fee provision of the Equal Access to Justice Act, as enacted at the time, permitted an “award to a prevailing party *2172 ... of fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States.” Id., at 158, 110 S.Ct. 2316 (quoting 28 U.S.C. § 2412(d)(1)(A) (1988 ed.)). The provision did not mention fee-defense work — but the Court nonetheless held that such work was compensable. See Jean, supra, at 160-166, 110 S.Ct. 2316. I would do the same here.
The majority focuses on particular words that appear in the Equal Access to Justice Act: “fees,” “prevailing party,” and “civil action.” See ante, at 2163. But neither the term “fees” nor the phrase “prevailing party” relates specifically to fee-defense work. And even assuming that the phrase “civil action” is more easily read to cover fee litigation than the phrase “actual, necessary services,” that difference here is beside the point. I find the necessary authority in' the words “reasonable compensation,” not the words “actual, necessary services.” In order to ensure that each professional is paid reasonably for compensable services, a court must have the discretion to authorize pay reflecting fee-defense work.
The majority asserts that by interpreting the phrase “reasonable compensation,” I have effectively “excise[d] the phrase ‘for actual, necessary services rendered’ from the statute.” Ante, at 2167. But the majority misunderstands my views. The statute permits compensation for fee-defense work as a part of compensation for the underlying services. Thus, where fee-defense work is not necessary to ensure reasonable compensation for some underlying service, then under my reading of the statute, a court should not consider that work when calculating compensation.
Indeed, to the extent that the majority bases its decision on the specific words of § 330(a), its argument seems weak. The majority disregards direct statutory evidence that Congress intended to -give courts the authority to account for reasonable fee-litigation costs. Section 330(a)(6) states that “any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.” This provision does not authorize compensation, but rather assumes (through the words “any compensation awarded”) pre-existing authorization under § 330(a). And the majority cannot convincingly explain why, under its reading of the statute, fee-application is a compensable “actual, necessary servic[e] rendered” to the estate.
The majority asserts that a fee application, unlike fee defense, can be construed as a “service” to the bankruptcy estate. See ante, at 2167-2168. The majority draws an analogy between a fee application and an itemized bill prepared by a car mechanic. See ibid. It argues that, like an itemized bill, a fee application is a “service” to the customer. But customers do not generally pay their mechanics for time spent preparing the bill. A mechanic’s bill is not a separate “service,” but rather is a medium through which the mechanic conveys what he or she wants to be paid. Similarly, a legal bill is not a “service” rendered to a client. In fact, ASARCO concedes that attorneys do not charge their clients for time spent preparing legal bills. See Tr. of Oral Arg. 33. A bill prepared by an attorney, or another bankruptcy professional, is not a “service” to the bankruptcy estate.
The majority suggests that a fee application must be a service “ ‘because the preparation of a fee application is not required for lawyers practicing in areas other than bankruptcy as a condition to getting paid.’ ” Ante, at 2167 (quoting 78 Fed. Reg. 36250 (2013)). But if the existence of a legal requirement specific to bankruptcy were sufficient to make an activity a com- *2173 pensable service, then the time that a professional spends at a hearing defending his or her fees would also be compensable. After all, the statute permits a court to award compensation only after “a hearing” with respect to the issue. § 330(a)(1). And there is no such requirement for most attorneys, who simply bill their clients and are paid their fees. But the majority does not believe that preparing for or appearing at such a hearing — an integral part of fee-defense work — is compensable. The majority simply cannot reconcile its narrow interpretation of “reasonable compensation” with § 330(a)(6)’s provision for fee-application preparation fees.
In my view, the majority is wrong to distinguish between the costs of fee preparation and the costs of fee litigation. Cf. Jean, 496 U.S., at 162, 110 S.Ct. 2316 (“We find no textual or logical argument for treating ... differently a party’s preparation of a fee application and its ensuing efforts to support that same application”). And the majority should not distinguish between the compensability of fee litigation under the Equal Access to Justice Act and fee litigation under the Bankruptcy' Code. Its decision to do so creates anomalies and undermines the basic purpose of the Bankruptcy Code’s fee award provision.
For these reasons, I respectfully dissent.